IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL J. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV386 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Michael J. Thomas, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 12; see also Docket Entry 11-1 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 150-53.)[1] Upon denial of that application initially (Tr. 65-74, 87-89) and on reconsideration (Tr. 75-84, 93-97), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 98-100). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 32-64.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 16-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4, 14-15), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since October 28, 2013, the application date.
>
> . . .
>
> 2. [Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disease (COPD); and bilateral elbow arthritis.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] The record contains only an application for Disability Insurance Benefits ("DIB") filed by Plaintiff on October 28, 2013. (Tr. 150-53.) However, all subsequent administrative records reflect that the Social Security Administration treated Plaintiff's claim as one for SSI, rather than for DIB.

2

. . .

>4. . . . [Plaintiff] has the residual functional capacity to perform less than the full range of light work . . . . [Plaintiff] can occasionally stoop and climb ramps and stairs. He cannot climb ropes, ladders, or scaffolds. He can have no more than occasional exposure to fumes, dusts, gases, poor ventilation, or extremes of heat, cold, and humidity. He cannot drive an automobile for the completion of job tasks. He can have occasional exposure to hazards. He can perform frequent handling and fingering with occasional reaching overhead.
>
>. . .
>
>5. [Plaintiff] has no past relevant work.
>
>. . .
>
>9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.
>
>. . .
>
>10. [Plaintiff] has not been under a disability, as defined in the [Act], since October 28, 2013, the date the application was filed.

(Tr. 21-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

7

## B. Assignment of Error

In Plaintiff's sole issue on review, he contends that "[t]he ALJ failed to properly weigh the opinion of consultative examiner Dr. [David J.] Johnson." (Docket Entry 11-1 at 5 (italics and single-spacing omitted).) According to Plaintiff, because Dr. Johnson's opinion constitutes "the only opinion in the record from a source who examined [] Plaintiff during the relevant period . . . the ALJ [wa]s required under 20 C.F.R. § 416.927 to generally give this opinion more weight than non-examining sources" (id. at 6 (citing Tr. 586-93)), which "[wa]s inconsistent with the ALJ relying on the opinion . . . of [s]tate [a]gency medical consultant Dr. [Robert] Whittier, who did not examine [] Plaintiff at all" (id. at 7 (citing Tr. 25-26); see also Tr. 80-81). Additionally, Plaintiff asserts that the record contains "significant evidence . . . that supports Dr. Johnson's opinion" (Docket Entry 11-1 at 7) including a March 21, 2015, MRI of Plaintiff's lumbar spine (see id. (citing Tr. 664)), and a 2009 opinion from consultative examiner Dr. Stanley Rabinowitz (id. at 9 (citing Tr. 267)).[6] Finally, Plaintiff asserts that "the ALJ's argument that Dr. Johnson's opinion is based on subjective complaints is without

---

[5] (...continued)
review does not proceed to the next step.").

[6] Plaintiff describes the date of Dr. Rabinowitz's examination as "February 9, 2008." (Docket Entry 11-1 at 9.) Although the outset of Dr. Rabinowitz's evaluation reflects the date of the report as "February 9, 200**8**" (Tr. 264 (emphasis added)), the remainder of the report shows the examination date as "February 7, 200**9**" (id. (emphasis added); see also Tr. 265, 266, 267, 270).

merit" (id. at 8; see also Tr. 25), and that the ALJ improperly discounted Dr. Johnson's opinion because he "failed to include environmental and reaching limitations in his opinion" (id. (citing Tr. 25)). Plaintiff's contentions fall short.

Consultative examiners do not constitute treating sources under the regulations, see 20 C.F.R. § 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. § 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and, where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . . factors [in 20 C.F.R. § 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)).

On December 20, 2013, Dr. Johnson conducted a consultative medical examination of Plaintiff (Tr. 586-93), reporting Plaintiff's diagnoses as "[s]evere lumbar injury in 1995" and "[a]rthritis . . . involv[ing] multiple joints" (Tr. 590). As a result of those impairments, Dr. Johnson concluded that Plaintiff "is limited in his ability to sit, stand or walk and lift[] . . . and cannot do repeated bending, stooping or lifting." (Id.) Dr. Johnson further opined that Plaintiff's arthritis "makes it difficult for him to have sustained gripping of things and he tends to drop things easily[,]" although "[h]e can do most fine motor skills." (Id.) The ALJ discussed Dr. Johnson's findings on examination in a fair amount of detail (see Tr. 24), and then weighed Dr. Johnson's opinions as follows:

> The [ALJ] affords Dr. Johnson's opinion little weight due to the brevity of Dr. Johnson's examination of [Plaintiff] and the inconsistency of his findings with the overall objective record. Specifically, the record does not show that [Plaintiff's] arthritis affects multiple joints other than [Plaintiff's] bilateral elbows. It appears that Dr. Johnson's opinion relies upon [Plaintiff's] subjective allegations. However, Dr. Johnson appropriately identified [Plaintiff's] mild hand weakness and the need to limit [Plaintiff's] exertional activities due the degenerative changes in his spine. Dr. Johnson failed to identify environmental limitations and reaching limitations in light of [Plaintiff's] COPD and elbow arthritis.

(Tr. 25.)

Plaintiff first argues that, because Dr. Johnson's opinion constitutes "the only opinion in the record from a source who examined [] Plaintiff during the relevant period . . . the ALJ

10

[wa]s required under 20 C.F.R. § 416.927 to <u>generally</u> give this opinion more weight than non-examining sources" (Docket Entry 11-1 at 6 (emphasis added) (citing Tr. 586-93)), which "[wa]s inconsistent with the ALJ relying on the opinion . . . of [s]tate [a]gency medical consultant Dr. Whittier, who did not examine [] Plaintiff at all" (<u>id.</u> at 7 (citing Tr. 25-26); <u>see also</u> Tr. 80-81). However, the applicable regulations make clear that, although as a <u>general</u> matter, opinions from an examining source warrant more weight than those from a non-examining source, <u>see</u> 20 C.F.R. 416.927(c)(1), non-examining state agency consultants constitute "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation[,]" 20 C.F.R. § 416.927(e)(2)(i), and that ALJs must weigh opinions from non-examining state agency consultants using the same factors the ALJs use to weigh any other medical opinions, <u>see</u> 20 C.F.R. § 416.927(e)(2)(ii).

Indeed, ALJs can permissibly credit the opinions of non-examining state agency consultants, who typically render their opinions without the benefit of a full record, over those of even a <u>treating</u> physician, to the extent the non-examining source's opinions remain consistent with the evidence received subsequent to their opinions. <u>See</u> <u>Lapeer v. Astrue</u>, No. 5:08-CV-256-D(1), 2009 WL 2487038, at *7 (E.D.N.C. Aug. 13, 2009) (unpublished). Thus,

11

the ALJ did not err merely by assigning more weight to Dr. Whittier's opinions than to Dr. Johnson's opinions.

Moreover, contrary to Plaintiff's allegations (see Docket Entry 11-1 at 7), the ALJ did not fully rely on Dr. Whittier's opinion in formulating the RFC. (See Tr. 25-26.) The ALJ accorded Dr. Whittier's opinion only "partial weight," because Dr. Whittier "failed to identify the need for environmental limitations or reaching limitations" (Tr. 26 (emphasis added)), which constituted one of the reasons the ALJ also discounted Dr. Johnson's opinions (see Tr. 25). Thus, the ALJ permissibly credited Dr. Whittier's opinions only to the extent those opinions remained consistent with the evidence of record subsequent to his opinions. See Lapeer, 2009 WL 2487038, at *7.

Plaintiff next asserts that the record contains "significant evidence . . . that supports Dr. Johnson's opinion" (Docket Entry 11-1 at 7), including a March 21, 2015, MRI of Plaintiff's lumbar spine (see id. (citing Tr. 664)), and a 2009 opinion from consultative examiner Dr. Stanley Rabinowitz (id. at 9 (citing Tr. 267)). Plaintiff maintains that, in light of the MRI's findings of mild, chronic degenerative desiccation, disc bulges, and possible irritation of the right L5 nerve root (id. at 7 (citing Tr. 664)), the ALJ "must acknowledge some level of consistency between Dr. Johnson's opinion and the medical record" (id. at 8). In addition, Plaintiff contends that Dr. Johnson's opinion harmonizes with Dr.

12

Rabinowitz's conclusion that, "even [in February 2009], Plaintiff had probable degenerative joint disease and chronic lumbothoracic and cervical spine pain syndromes probably secondary to discogenic disease, with lower extremity radiculopathy." (Id. at 9 (citing Tr. 267).)

Plaintiff's argument regarding the March 2015 MRI proceeds from a faulty premise, i.e., that the ALJ found no consistency between Dr. Johnson's opinions and the record evidence regarding Plaintiff's spinal impairment. (See Docket Entry 11-1 at 7-8.) Although the ALJ discounted Dr. Johnson's opinions due to "the inconsistency of his findings with the overall objective record[,]" in the next sentence, the ALJ clarified that "the record d[id] not show that [Plaintiff's] arthritis affect[ed] multiple joints other than [Plaintiff's] bilateral elbows." (Tr. 25 (emphasis added).) Moreover, the ALJ also ruled that "Dr. Johnson appropriately identified . . . the need to limit [Plaintiff's] exertional activities due the degenerative changes in his spine." (Id. (emphasis added).) Furthermore, the ALJ expressly noted that the radiologist who interpreted the March 2015 MRI "did not see a finding that would explain [Plaintiff's complaints of] generalized gait disturbance[,]" and concluded that the MRI did "not support the alleged severity of [Plaintiff's] back pain and need for a cane." (Tr. 24 (citing Tr. 664).) Accordingly, Plaintiff has

13

failed to show how the MRI's results should have compelled the ALJ to accord more weight to Dr. Johnson's opinions.

Similarly, Plaintiff has not demonstrated how Dr. Rabinowitz's February 2009 evaluation required the ALJ to accord more weight to the opinions of Dr. Johnson.  The ALJ discussed Dr. Rabinowitz's findings, but reasoned that, "[b]ecause th[at] consultative examination occurred well before [Plaintiff's] alleged onset date, the [ALJ] affords the examination evidence and Dr. Rabinowitz's opinion little weight."  (Tr. 24; see also Tr. 26 ("The [ALJ] gives little weight to the consultative examination from 2009, due to remoteness of the evaluation." (internal citation omitted).)  Plaintiff did not challenge the ALJ's rejection of Dr. Rabinowitz's opinions, offered over four and a half years before Plaintiff's alleged onset date, on the grounds of remoteness (see Tr. 24, 26). (See Docket Entry 11-1.)

Next, Plaintiff asserts that "the ALJ's argument that Dr. Johnson's opinion is based on subjective complaints is without merit."  (Id. at 8; see also Tr. 25.)  In support of that assertion, Plaintiff details various of Dr. Johnson's objective findings, such as decreased range of motion in the cervical and lumbar spines, decreased grip strength on the left, swelling in Plaintiff's hands, difficulty with postural movements, and xrays showing thoracic and lumbar spondylosis, that supported Dr. Johnson's opinions.  (Id. (citing Tr. 587, 588, 590, 592).)

14

That argument fails for two reasons. First, the ALJ expressly discussed the objective findings in Dr. Johnson's report (see Tr. 24), and credited his opinions regarding Plaintiff's "mild hand weakness and the need to limit [Plaintiff's] exertional activities due the degenerative changes in his spine" (Tr. 25). Second, a comparison of Plaintiff's subjective symptom reporting at the outset of the examination, with Dr. Johnson's conclusions at the end of the report, supports the ALJ observation that "[i]t appears that Dr. Johnson's opinion relies upon [Plaintiff's] subjective allegations." (Tr. 25.)

For example, Plaintiff reported to Dr. Johnson that "[h]e can sit for about 20 minutes, . . . [h]e can occasionally lift 20 pounds but cannot do repeated bending, stooping or lifting." (Tr. 586 (emphasis added).) Plaintiff further claimed that "[h]e drops things easily" and that "it takes him a while to button and tie [his] shoes." (Id. (emphasis added).) In comparison, Dr. Johnson concluded that Plaintiff "is limited in his ability to sit, stand or walk and lift" and "cannot do repeated bending, stooping or lifting." (Tr. 590 (emphasis added).) Dr. Johnson also opined that Plaintiff "tends to drop things easily" and that "he has slowed down on things like buttons and tying shoes." (Id. (emphasis added).) Given the similarity between Plaintiff's subjective symptoms reporting and Dr. Johnson's conclusions, and the fact that Dr. Johnson's report does not reflect that he

15

objectively tested Plaintiff's ability to sit, bend, stoop, lift, hold objects, button items, or tie his shoes (see Tr. 586-93), the ALJ did not err by discounting Dr. Johnson's opinions, in part, as based on Plaintiff's subjective complaints.

Plaintiff additionally argues that the ALJ improperly discounted Dr. Johnson's opinions because he "failed to include environmental and reaching limitations." (Docket Entry 11-1 at 8 (citing Tr. 25).) In particular, Plaintiff contends that, in order for Dr. Johnson to include environmental limitations in his opinions, he "would need to engage in what the ALJ just wrongly accused him of engaging in – basing limitations on Plaintiff's subjective complaints." (Id. at 8-9.) With respect to reaching, Plaintiff maintains that "Dr. Johnson noted that Plaintiff has problems gripping, which would presumably involve reaching limitations as well." (Id. at 9 (citing Tr. 590).)

The ALJ did not err by discounting Dr. Johnson's opinions, in part, because they lacked environmental and reaching restrictions. (See Tr. 25.)[7] Regarding environmental restrictions, the Court must consider the ALJ's statement in the context of the timing of Plaintiff's COPD diagnosis. Dr. Johnson offered his opinions in December 2013 (see Tr. 586-593), which preceded Plaintiff's March 2015 diagnosis of COPD (see Tr. 597-651), and Plaintiff neither complained of any lung symptoms at Dr. Johnson's examination (see

---

[7] As discussed earlier, the ALJ also discounted Dr. Whittier's opinion on this basis. (See Tr. 26.)

Tr. 586-93), nor in his disability reports during the initial and reconsideration levels of review (see 184, 190-92, 207-11, 214-18). Thus, the ALJ did not fault Dr. Johnson for <u>ignoring</u> environmental restrictions despite evidence that Plaintiff suffered from COPD, but rather, discounted Dr. Johnson's opinions because Plaintiff's <u>subsequent</u> diagnosis of COPD rendered those opinions insufficient to capture all of Plaintiff's limitations. Moreover, Plaintiff's assertion that Dr. Johnson's notation of Plaintiff's diminished grip on the left "presumably involve[d] reaching limitations as well" (Docket Entry 11-1 at 9 (citing Tr. 590)) falls short, as the Commissioner's RFC policy clearly contemplates that handling (gross manipulation) and reaching constitute distinct manipulative abilities, see Social Security Ruling 85-15, <u>Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments</u>, 1985 WL 56857, at *7 (1985) (noting that "<u>[r]eaching</u>, <u>handling</u>, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities" and defining reaching as "extending the hands and arms in any direction" and defining handling as "seizing, holding, <u>grasping</u>, turning or otherwise working primarily with the whole hand or hands" (emphasis added)).

Finally, Plaintiff asserts that "Dr. Johnson opined limitations that would put Plaintiff at a sedentary exertional

17

level or less," and that the ALJ should therefore have found Plaintiff disabled under Rule 201.09 of the Medical-Vocational Guidelines ("Grids"). (Docket Entry 11-1 at 9 (citing 20 C.F.R., Pt. 404, Subpt. P, App'x 2, § 201.09).)[8] However, Plaintiff does not explain how Dr. Johnson's vague opinion that Plaintiff "is limited in his ability to sit, stand or walk and lift[] . . . and cannot do repeated bending, stooping or lifting[,]" which lacked <u>any</u> specifics as to the degree of Plaintiff's limitations in those areas (Tr. 590), "would put Plaintiff at a sedentary exertional level or less" (Docket Entry 11-1 at 9). <u>See</u> 20 C.F.R. 416.967(a) (defining sedentary work as "involv[ing] <u>lifting no more than 10 pounds</u> at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools[,]" and "involv[ing] sitting" and "walking and standing . . . occasionally" (emphasis added)).

In sum, Plaintiff has failed to demonstrate reversible error with respect to the ALJ's evaluation of Dr. Johnson's opinions.

## **II. CONCLUSION**

Plaintiff has not established an error warranting relief.

---

[8] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits h[er] to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" <u>Black v. Astrue</u>, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), <u>recommendation adopted</u>, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

                                            /s/ L. Patrick Auld
                                          **L. Patrick Auld
                                  United States Magistrate Judge**

June 14, 2018